I will go first, Yevva Mikhalyan appearing on behalf of Petitioner Ruben Aurelio Bulgin. I'm joined by Mr. Matthew Tang and we are under the supervision of Mr. Martín Estrada. As an update to our case, we want to inform your honors that our client was released from immigration custody about two weeks ago and has since found a job. He called to inform us and we have also received notice from the government. In this appeal, it is uncontested that the BIA failed to consider a declaration submitted by Mr. Bulgin's sister and the government seeks remand on that basis. In response, I will argue that no remand is necessary because even without the declaration, the evidence in the record compels the conclusion that Mr. Bulgin is entitled to deferral of removal under CAT. Then Mr. Tang will argue that this court may consider the declaration submitted by Mr. Bulgin's sister without remanding to the BIA and that such consideration should result in this petition being granted. So I think you may be right that it's uncontested that the declaration wasn't considered because the government is asking us to remand on that basis. It's an odd circumstance from my perspective in the sense that it does seem uncontested but it also seems based on this record that the declaration clearly was considered by the IJ. Let me just walk you through that if you don't mind. You would agree that the IJ actually considered the petitioner's testimony? Because that's at the very end of the IJ's decision? Correct. The IJ considered the testimony but did not give reasoned consideration to the letter. And Mr. Tang will also discuss the letter in more detail. So it's interesting because if you go to look at that testimony which I think is the administrative record at 47 and maybe this is more of a question for the government but it's pretty clear from the colloquy between the IJ and the judge, between the IJ and Mr. Bulgin that that's precisely what the testimony is talking about. It's about the letter. The judge I think says on 108, says how did you get this letter from her? And there's this discussion about how he got the letter and it's all about the letter it seems. And so it's hard, how in light of that is it the parties sort of now agreed position that the letter was never considered by the IJ? The IJ doesn't mention the letter but the IJ mentions the incident and we know from the testimony colloquy that the IJ actually, the whole point of it was to talk about the letter. So it just seems kind of odd, doesn't that seem a little odd to you that this is not about the letter it's only about the testimony? Seems a little crib. Well that may be a question for the government but we do think that the IJ did not consider, give reasoned consideration at least to the letter and should have. However I do want to turn my argument over to the facts in this case and why the letter does not even need to be considered in order to hold that Mr. Bulgin is entitled. Before you do that, did the IJ explicitly say, I'm sorry, was it explicitly alluded to, did he say I consider the affidavit? The IJ did not explicitly say that he considered the affidavit, no. To be clear in your answer Judge Corman is asking, I'm not sure what he's asking in IJ's decision, I think you're taking it as the IJ's decision. In the colloquy with the petitioner, the IJ did specifically allude to the letter and it's clear from the colloquy that the IJ was considering the letter in the testimonial colloquy, correct? I believe they discussed the letter in the testimony but they did not go into detail and the IJ was determining Mr. Bulgin's credibility and not the details and contents of the letter. Okay, so your view is that while the letter was discussed during the colloquy, they weren't talking about the content of the letter, it had to do more with what weight the IJ should give to the letter? Correct, and the IJ did not give reasoned consideration to the letter as well. And I understand it's an odd case because you have the government agreeing with you but it's also when you, it's hard to say the IJ didn't give, I mean I feel bad for the poor IJ here, the IJ actually apparently did think quite a bit about whether or not to, what to make of this letter because the IJ brought it up and discussed it with the petitioner. So it's hard for me to see that the IJ didn't give reasoned consideration. I guess there's two different arguments. One, that it didn't give any reasoned consideration at all seems quite a stretch. The idea that the IJ didn't specifically mention the letter, obviously the IJ did not specifically mention the letter in its decision, I just don't know whether that's necessary. Go ahead. It sounds like this was more questions maybe I should have asked Mr. Tang. So I'll let you finish your part. Thank you so much. I want to turn your attention, your honors, to the egregious facts in this case which show that Mr. Bulgin's beating was a severe beating constituting torture. The government attempts to minimize these facts which, as I mentioned, were absolutely egregious. While shopping on a visit to Panama in 2012 to visit his grandmother, Mr. Bulgin was pulled over and detained by the police. The police claimed to have a warrant out for Mr. Bulgin, even though he had not been in the country since he was a child. Mr. Bulgin was then taken to an unknown location and interrogated and beaten for eight hours. The officers beat him severely, hitting him in the stomach, the mouth, the eyes, so many times that Mr. Bulgin lost count. The officers stuck a gun in Mr. Bulgin's mouth and said, quote, playing time was over. The officers pistol whipped him. They cracked his head. They claimed that they would make him disappear without a trace. Mr. Bulgin pleaded for his life and was then forced to hand over the $3,600 that he had on him to pay for his grandmother's chemotherapy treatment with a promise to secure an additional $15,000 for the government. Here the government relies entirely on two cases which contain only cursory discussions regarding cat relief to explain why Mr. Bulgin should not be granted relief. Both of these cases had already granted relief based on asylum. In contrast, the cases cited by Mr. Bulgin give full reasoned discussions of cat and should be relied on instead. Furthermore, Mr. Bulgin has established that he would be tortured by the government officials themselves. And thus, the government repeatedly citing to country conditions reports as evidence that the government of Panama would not approve of the torture of Mr. Bulgin is immaterial here. In Barajas-Romero v. Lynch, this court found that even the threat of torture by off-duty police officers is sufficient to satisfy the requirement as long as the torture will be conducted by the government officials themselves. Furthermore, the torture that Mr. Bulgin suffered was more than only physical torture. He received death threats. His family's passports were taken, ensuring that they could not leave until these police officers felt like allowing them to leave. The police officers intimidated Mr. Bulgin for the remainder of the time that he was in Panama. They parked a patrol car outside of their house. They were constantly watching them to the point that Mr. Bulgin's wife testified that she was afraid to even go to the U.S. embassy because of this. And so that because of that, Mr. Bulgin has demonstrated that he suffered torture according to the CAT regulations and that just the evidence already considered by the BIA is sufficient to grant him relief. Thank you. Let's hear from your partner, Mr. Tang. Good morning, Your Honors. Matthew Tang on behalf of Ruben Murillo Bulgin. So I want to start by first addressing Judge Van Dyke's question about the fact that the IJ may have looked at the letter. Whether the IJ looked at the letter is irrelevant. What matters is the fact that the IJ never mentioned the letter. Counsel, I mean, is it really accurate to say that the IJ may have looked at the letter when we know from the record that the IJ obviously looked at the letter? That's the whole reason why the IJ was having this colloquy about it with the petition. Certainly, Your Honor. But in coldly holder, this court also helped listen to two to listen to testimony from two experts. And in its opinion, the IJ only referenced the testimony of one of this expert, one of the experts. And this court reversed that opinion because it did not discuss the testimony of the other experts. And so the idea is that counsel, I guess it depends on what you what you mean by not discuss the testimony. It seems like you and maybe the government seems to be agreeing here that you have to actually. They did discuss the sister. The IJ in the IJ opinion discussed the sister. And said, I'm not giving that a lot. I'm not putting much weight on on what this is, what the respondents said happened to the sister because of the time between the two. And it makes no sense. And he discounts the petitioner's discussion explanation for four. Well, that obviously is referencing the testimony and the testimony was about the letter. So it's I'm just having trouble seeing how this somehow means that the letter wasn't discussed. Your Honor, the IJ actually never mentioned Bogey and sister or the letter in his testimony. It's not true. It says the respondent testified that something similar happened to a sister, but couldn't explain why the police waited until 2018. This is on the last page of the IJ decision on A.R. 37. I mean, are you think that's about some other sister? No, Your Honor. But nearly this court has repeatedly said that merely stating that the IJ has considered all the evidence is not enough. I do have to give reason consideration. There was no reason consideration here. And and Your Honor, this this point is a disputed the government doesn't dispute that the IJ did not give reason consideration to the letter. However, despite that, this court can and should look at the letter just as you claim that the IJ did and come to a conclusion that it compels a single conclusion that Mr. Bogey would say that. This is I claim the IJ did. Yes, Your Honor. Counsel, can we. OK. Did the IJ look at the letter or not? Yes, Your Honor. The IJ most likely not just me claiming that the IJ looked at the letter. Would you agree with that? Yes, Your Honor. OK. OK. I think we know the IJ looked at the letter because the IJ has a colloquy. You can you can argue that. Well, the IJ didn't specifically mention the letter. He only referred to the testimony of the person that had the letter, you know, where they talked about the letter. And so the IJ didn't specifically mention that's one thing. But to say that like that, I'm claiming that the IJ looked at the letter. I'm just saying what the record says. Can we agree with that? Not sure, Your Honor. But what the government what we and the government agree on is that the IJ did not give reason consideration to that letter. As this court's precedents require in its opinion specifically, that the IJ can't simply make a general statement that it considered all the evidence and therefore therefore make a decision based off that. But going beyond that, I want to bring up a particular case, highly beholder. And in highly beholder, this court granted direct cat relief, even though this court stated that the BIA had ignored significant evidence. And I'll quote from highly beholder here. First, this court stated the general proposition that the regulations implementing cats explicitly require the IJ to consider all relevant evidence to the possibility of future torture. And this court then went on to say this was not done here. In particular, this court pointed to the fact that the BIA ignored facts recounted in a letter from Haile's son that soldiers were still harassing and arresting members of her family five years after she left Eritrea. And despite the fact that the BIA ignored this letter, this court then went on to say that they could grant cat relief directly without remanding for consideration. Because, and I quote, when the evidence compels but one conclusion and is unrebutted, there is no reason to remand. Now, all of the facts in this case are unrebutted. The fact that Mr. Bogeen was kidnapped in 2012, the fact that his cousin was murdered in 2018, the fact that his sister was kidnapped and assaulted and told that if Mr. Bogeen returned to Panama that she would be tortured or killed. All of these are unrebutted facts. There is no evidence to the contrary. And when we have these unrebutted facts, this court can and should just decide that Mr. Bogeen is entitled to cat relief. Thank you, Mr. Chay. Let's hear from the government and I'll give you some time for rebuttal. Thank you. May it please the court. My name is Jacqueline Chay and I represent the Attorney General in this case. I ask this court to come to the following two conclusions. One, remand is warranted to the agency because the agency decisions are unclear and do not explain why the letter was rejected. And two, remand is not futile because the record does not compel that Mr. Rulon met his burden to show more likely than not he'll be tortured in the future in Panama. Your Honors, I think going to your questions, the government does think that I.J. here actually did consider the letter by the statements in the factual quality with him as well as the inference to it in his decision. But he doesn't mention it and then when you consider the board's decision, it seems a little bit inconsistent. Is it your position that for an I.J. to address a piece of evidence that the I.J. has to specifically for that evidence or if the I.J. refers to a colloquy in the testimony about that evidence, could that be sufficient? I think it could be consistent, but it looks like he was making an adverse credibility determination in his decision. And then when it goes to the board, they actually accepted everything as true. So that alone was saying that it was speculative. Counsel, I think what you're saying makes sense. Except for I just want to make sure it looks to me like what he was doing. The I.J. was not necessarily. I mean, he does make an adverse credibility determination about the petitioner. But in that particular part, it seemed like he was making an adverse credibility determination about the piece of evidence, so to speak. He was discounting the weight of that piece of evidence. Is that what you meant by or were you talking about? I agree. I agree there's an inference to that. Yes, your honor. I guess the problem we saw and the reason for remand was because the board's decision accepted everything that he said is credible. And then additionally found, you know, his fear was speculative and specifically said it was unsupported by documentary evidence. So by the board and the I.J. not specifically mentioning or discussing that declaration, we found it problematic. In addition to the color of law issue here as well. We do concede that that likely will have to be corrected upon remand, your honor. But going back to the other counsel, I mean, evidence, I think, your honor, that they are basically mischaracterizing the record a little bit. The B.I.A. did something that they do a lot, which is, you know, kind of creates problems, it seems like, which is that they, you know, you have an I.J. who has an adverse credibility finding and the B.I.A. doesn't rely on that. And then so I guess on remand, I guess the I.J. could could rely on the adverse credibility finding. I mean, I think that could happen if it went all the way back to the I.J. Yes, your honor. Couldn't the board revisit the I.J., the adverse credibility finding? I think it could. Yes, your honor. Because I think there is enough in his decision to make the adverse credibility determination. They didn't. They assumed that the B.I.A. was credible. That's correct. So that's still an issue that they conceivably could resolve, correct? Correct. I agree, your honor. And getting back to my point about the past torture, I think in the brief, they seem to over-exaggerate the facts a little bit here. So I just wanted to point some things out. This case is clearly distinguishable from Edu and Haley, who have significant past torture. In this case, he really only suffered minor injuries, cuts, bruises, required some stitches. He was not beat for the entire period of time. His wife actually said the whole incident from when he was taken to brought back to his house was about six to seven hours in total. And during that time, he was arrested. He was in the car. They specifically told him that we are not going to harm you. And it looks like the only reason he was harmed here, he wasn't beaten because he was being punished because of his father. Rather, they just wanted money here. And I think they got a little bit frustrated with him when he was lying to them or they thought he was lying. But after he gave them their phone number, his phone number, and he gave them money, they released him. He was threatened to kill here twice. The one time, he was threatened if he didn't give his phone number for his father, which he gave him. And then he was later threatened a day or so later about whether they report him. And from his testimony, it actually goes against that there's any mental suffering here. At the record at 97, he said everything was fine, you know, after it was resolved at the police station. There's just no evidence showing that there's any mental suffering here in this case. In fact, in the interview. I thought he put a gun in his mouth. Your Honor, the only record that I saw from his testimony, he specifically was asked about his injuries, and he said he was hit in the stomach and in the face. And that's at 86. When he was asked how he suffered the injuries, that was at record at 90. He said he was punched and he was hit in the head with a gun. I didn't see any reference to pistol whipping as that was. Maybe I'm wrong, but I just thought that he was punched in the abdomen. He put his gun in his mouth after he fell to the floor and told him that the playing time was over. And I'm not sure when that came on the record. Counsel, I think that's on page four of his opening brief. I think it was his opening. Maybe it was his opening brief to us before they did a new opening brief. Yes, Your Honor. When I looked at their cites, the cites to his actual testimony, the only thing I saw was it was mentioned that he was hit with a gun. And that's all that's mentioned. Maybe it's wrong there. I'll double check. Your Honor, I think... Can I ask you a quick question? Yes, Your Honor. Suppose we remanded him. Just that we should, if you consent. We would... We could... That would be... We don't have to decide the cat issue. It would be for the board on a full record to make that determination. That's correct. Yes, Your Honor. And that's what we recommend here, that the board with their expertise gets to be that fact finder and not the converse here. What they're asking for to do is to consider that declaration. And I think, Your Honor, they also said that he was intimidated by the car near their house. That was never his testimony. That was his testimony from his wife. And I think, Your Honor, if you just look at the entire testimony of this case, you can see why the IJ made the adverse credibility determination. I mean, he originally kind of painted this story that the whole reason he was targeted was because of his dad and his military service. And then later on, he pretty much says, it might have been my cousin who was actually involved in this money extortion scheme. So I think there's just, along with the credibility issues in this case, we recommend the remand in this case because there's just not enough analysis from the board and it seems a little bit inconsistent. And that's why we recommend a remand in this case. Your Honor, did you have any additional questions for me? Well, thank you. In summary, because this court normally defers to the agency on the factual determination of whether a non-citizen met his burden of proof for cat deferral, and it's not apparent if the agency failed to consider relevant evidence here, the board's analysis is incomplete, and we urge this court to remand to provide additional analysis, weigh the evidence, and further consider his cat claim here. Thank you, Your Honors. Okay, I have a little bit of rebuttal time for, let's see, for Petitioner's Counsel. Let's see, two minutes. Do you want to share it or what? Or do you want to just do it? I could do the rebuttal. Okay. Thank you, Your Honors. There is no reason to remand this case. The government says that Mr. Bullein did not show a risk of future torture. This is completely incorrect. The government attempts to minimize the facts of what happened to Mr. Bullein. The government minimizes the facts just as the IJ did by saying that he received a cut on the head. This is not what happened. Mr. Bullein was tortured for eight long hours, and this establishes this combined with the rest of his testimony with his wife's corroborated testimony, which is also part of the record. And certainly, if you include the letter from his sister, establishes that if Mr. Bullein returns to Panama, he will absolutely be tortured, and this torture will occur by government officials. Can I ask you a question? If we granted the government's motion, as the government said, the CIA would determine this. One of the reasons you gave for wanting us to do it, that is the torture issue, is because he was incarcerated, and that would prolong his incarceration. But you started off by telling us today that he has been released. So there's no reason for us, if we grant the government's motion, not to give it back to the BIA to consider everything. I don't see how you're prejudiced by this. It is correct that Mr. Bullein was released. However, we still hold that there is no reason to remand for the consideration of 18-year-olds. But how is he prejudiced? How is he prejudiced? If we do, is it that you don't trust the board? I mean, I'm just trying to understand. The government is simply saying, you can make this argument when it goes back to the BIA and they expressly consider the whole record, including the sister's affidavit, and then if they rule against you, you can come back here. The question is, I understood your argument that we should skip that because he was incarcerated, and therefore that would simply prolong his incarceration. But that argument is no longer here. So I don't know why you're prejudiced if we do what essentially the government wants. Because the BIA, Your Honor, the BIA already had a chance to consider this correctly and failed to do so, and there is no reason to remand for them to simply have a do-over and reconsider evidence that was already directly in front of them. There is nothing new for the BIA to consider in this case. It is the same facts and the same records they would be looking at, and therefore the BIA should not be given this chance. Okay. Thank you, counsel. Thank you very much, Your Honor. We appreciate your arguments this morning. What happened to Ms. Shea? Sorry, Your Honor, I'm here. I'm just sitting down in a normal courtroom. I'm just used to doing that. Sorry, Your Honor, I was still listening. Okay, all right. Well, I just want to thank the clinical program at Loyola School of Law for their willingness to participate in the court's pro bono program and Mr. Estrada for the supervision that he gave to the students. We do appreciate all the briefing and whatnot. And we also, that doesn't mean to say we don't appreciate the government's argument. We do, and we thank everybody for their arguments this morning for the positions they took in this case. So, with that, we'll submit the case for decision at this time. Thank you, Your Honor. I appreciate it. Thank you. And at this time, we're going to take a 10-minute break before we turn to our next case.
judges: Paez, Korman, Vandyke